**Randy A. SCOTT and Ann C. Scott, Plaintiffs–Appellees,**

**Continental Insurance Company, Plaintiff–Intervenor,**

v.

**MATLACK, INC., a Pennsylvania corporation and Conoco, Inc., a Delaware corporation, Defendants–Appellants.**

No. 97CA1496.

Colorado Court of Appeals, Div. IV.

April 15, 1999.

As Modified on Denial of Rehearing June 3, 1999.

Certiorari Granted May 30, 2000.*

---

* Justice RICE and Justice COATS do not participate.

Downey & Knickrehm, P.C., Thomas E. Downey, Jr., Kate E. Knickrehm, Henry J. Rickelman, Denver, Colorado, for Plaintiffs–Appellees.

Nathan, Bremer, Dumm & Meyers, P.C., Ellis J. Mayer, Denver, Colorado, for Plaintiff–Intervenor.

Long & Jaudon, P.C., David H. Yun, Ellen Rubright Ivy, Denver, Colorado; Otten Johnson, Robinson, Neff & Ragonetti, P.C., Hugh Q. Gottschalk, Patricia A. Thatcher; Legal Department of Conoco, Inc., J. Doss Carothers, Houston, Texas, for Defendants–Appellants.

Opinion by Judge NEY.

Defendants, Matlack, Inc., and Conoco, Inc., appeal the judgment entered on a jury verdict in favor of the plaintiffs, Randy A. Scott (driver) and Ann C. Scott (wife). We reverse the judgment and remand for further proceedings.

Plaintiffs operated a trucking company, A & R Trucking, which had no employees. Matlack, a trucking company that hauls bulk commodities, entered into an agreement with plaintiffs which provided that A & R Trucking, as a leased operator, would lease its truck and the services of its driver to Matlack. It is undisputed that the lease agreement complies with § 40–11.5–102, C.R.S. 1998 (setting forth the requirements for leas-

es between motor carriers and independent contractors).

Plaintiffs elected the contract provision for workers' compensation benefits under Matlack's group policy, which is a required lease provision under § 40–11.5–102(5), C.R.S. 1998. The premiums for this coverage were deducted from Matlack's payment to plaintiffs. Plaintiffs made the election sometime in April 1993, but the exact date is disputed.

On June 16, 1993, driver sustained personal injuries by falling off a trailer-truck while loading asphalt for Matlack at Conoco's refinery. Workers' compensation benefits were awarded to driver under Matlack's policy from Continental Insurance Company. Plaintiffs also brought this action against defendants claiming negligence and loss of consortium.

At the close of trial, the jury returned a verdict in favor of plaintiffs on both claims. The district court entered judgment against Matlack for approximately $1.6 million and against Conoco for approximately $1.4 million. Defendants appeal this judgment.

## I.

Matlack contends that this action against it was barred by the exclusivity provisions of the Workers' Compensation Act (Act), § 8–40–101, et seq., C.R.S.1998, and that the trial court therefore erred in refusing to dismiss the case. Matlack argues that because the driver was paid workers' compensation benefits, he is precluded from bringing this action. Under the circumstances, we perceive no error.

We agree with Matlack's assertion that an employee who elects workers' compensation benefits surrenders all other available remedies from his employer. Sections 8–41–102 and 8–41–104, C.R.S.1998; *Colorado Compensation Insurance Authority v. Baker*, 955 P.2d 86 (Colo.App.1998).

However, the dispositive issue here is whether the driver was Matlack's employee. Resolution of this issue requires an analysis of the interplay among several statutes addressing the insurance coverage and employment status of individuals engaged in small

businesses, including drivers under lease agreements.

The first of two pertinent statutes governing insurance coverage provided that: "[I]f the employer desires, the contract [for workers' compensation insurance] may include by endorsement as an employee of the insured any working partner or individual employer actively engaged in the operation of the business." Colo. Sess. Law 1990, ch. 62, § 8–44–102 at 521. By an amendment on April 19, 1993, the quoted sentence was removed from the statute. Colo. Sess. Law 1993, ch. 129 at 455–456.

However, on that same day and as part of the same House bill, a substantially similar provision was inserted in a different insurance coverage statute. That provision states:

Notwithstanding any other provision of articles 40 to 47 of this title, any working general partner or sole proprietor actively engaged in the business may elect to be included by endorsement as an employee of the insured and shall be entitled to elect coverage regardless of whether such working general partner or sole proprietor employs any other person under any contract of hire.

Section 8–40–302(5)(b), C.R.S.1998.

An election under § 8–40–302(5) is expressly construed as the employee's surrender of his or her rights to any remedies for personal injuries other than provided in the Act. Section 8–41–104, C.R.S.1998.

However, § 8–40–301(5), C.R.S.1998, provides that the term "employee" excludes any person working as a driver under a lease agreement pursuant to § 40–11.5–102 with a common carrier or contract carrier. This section became effective on June 6, 1992. Colo. Sess. Laws 1992, ch. 224 at 1798.

At the close of evidence, the trial court determined that § 8–40–301(5) overrides both § 8–44–102 and § 8–40–302(5)(b), and concluded that leased operators are not employees under the Act. Thus, the court ruled that the Act was not available as a defense for Matlack.

A.

Matlack asserts that this interpretation is erroneous. It contends that because plaintiffs' action arose on June 16, 1993, just after § 8–40–302(5)(b) came into effect, that statute would apply. Because of the "notwithstanding" phrase in § 8–40–302(5)(b), and because it was later enacted, Matlack argues that it would override § 8–40–301(5), which went into effect in 1992.

Alternatively, Matlack contends that both § 8–44–102, as it existed in 1993, and § 8–40–302(5)(b) render the driver an employee for purposes of the Act. Thus, it asserts that, even though the disputed date of the workers' compensation election is arguably either immediately before or after the time the two statutes were amended in April 1993, the question of which statute applies is irrelevant. Consequently, according to Matlack, since, under § 8–41–104, an employee surrenders all other remedies, and the driver here is an employee, the Act is driver's sole available remedy. We disagree with both these contentions.

Our review as to proper construction of these statutes is *de novo*. *Colorado for Family Values v. Meyer*, 936 P.2d 631 (Colo. App.1997).

We begin with the recognition that we must construe the Act as a whole to give consistent, harmonious and sensible effect to all its parts, while furthering the General Assembly's intent. *Monfort Transportation v. Industrial Claim Appeals Office*, 942 P.2d 1358 (Colo.App.1997). Also, if the statutory language is clear and unambiguous, the statute is not subject to interpretation. *Ernie Baylog, Inc. v. Industrial Claim Appeals Office*, 923 P.2d 361 (Colo.App.1996).

Here, both the insurance coverage statutes, §§ 8–44–102 and 8–40–302(5)(b), evidence a clear legislative intent to ensure insurance coverage for individuals engaged in small business by deeming them an "employee of the insured." On the other hand, § 8–40–301(5) evidences an equally clear legislative intent to exclude leased drivers from the definition of the term "employee." Thus, it appears that where the business of a leased driver is the type of small business ad-

dressed in the insurance coverage statutes, these two provisions—although each is facially clear and unambiguous—conflict.

Section 2–4–205, C.R.S.1998, is expressly designed to address conflicts between a general and specific statute, and provides that:

> If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption *and* the manifest intent is that the general provision prevail. (emphasis added)

*See Climax Molybdenum Co. v. Walter,* 812 P.2d 1168 (Colo.1991) (§ 2–4–205 used to resolve conflict between two statutes); *Husson v. Meeker,* 812 P.2d 731 (Colo.App.1991) (used in discussing two unambiguous, but conflicting, statutes).

■ Statutory repeal by implication is not favored, and therefore, a general statute will not be interpreted to repeal a conflicting special provision unless the General Assembly clearly and unmistakably evinces its intent to do so. *People v. Veloz,* 946 P.2d 525 (Colo.App.1997).

■ We can give meaning to all parts of the Act by recognizing that the insurance coverage statutes are general in nature, while the language in the leased driver statute governs a very specific occupation. To that end, the better approach is to construe the general insurance coverage statutes as effective except when the injured individual is a leased driver. *See* § 2–4–205; *see also* § 2–4–201(1)(b), C.R.S.1998 (presumption that entire statute is intended to be effective).

We arrive at this conclusion by determining that if either insurance coverage statute applies here, one of the two conjunctive requirements for overriding the applicability of a special provision under § 2–4–205—later adoption and manifest intent—is not present for each of these two general statutes. If we assume, without deciding, that the earlier-enacted § 8–44–102 is the applicable version of the insurance coverage statute, then we can easily conclude that the special leased driver provision controls because one of the conjunctive requirements—later adoption of the general statute—is not present.

Alternatively, if we assume, again without deciding, that § 8–40–302(5)(b) is the version of the insurance coverage statute that applies, then the other conjunctive requirement—a manifest intent that the general provision prevail—is not present.

While we recognize that the phrase "notwithstanding any other provision" in § 8–40–302(5)(b) could generally be considered a "governing provision," *see Home Health Care Professionals v. Colorado Department of Labor & Employment,* 937 P.2d 851, 854 (Colo. App.1996), we also note that, when necessary, the phrase has been ignored in order to further the intent of the Act as a whole. *See City of Thornton v. Replogle,* 888 P.2d 782 (Colo.1995) (declining to place particular emphasis on the introductory "notwithstanding" phrase since to do so would fail to treat the workers' compensation statutes as a whole); *see also In re Adoption of T.K.J.,* 931 P.2d 488 (Colo.App.1996) ("notwithstanding" phrase not given overriding effect because it would render other provisions of the Children's Code mere surplusage).

Given the General Assembly's attempts to single out leased drivers in § 8–40–301(5) and in other provisions, *see* § 8–41–401(7), C.R.S.1998 (excluding leased drivers from insurance provisions for contracted-out work), we must conclude that the intent in this instance was to do the same. Thus, we agree with the trial court that under § 8–40–301(5) the driver was not an employee for purposes of the Act. Accordingly, since the Act did not provide the exclusive remedy in this instance there was no error in failing to dismiss the case.

## B.

■ Matlack also contends that, even if § 8–40–302(5)(b) is inapplicable, the trial court erred by not finding that the driver was an employee under the "control" and "relative nature of the work" tests used to distinguish an "employee" from an "independent contractor." Again, we disagree.

In *Frank C. Klein & Co. v. Colorado Compensation Insurance Authority*, 859 P.2d 323 (Colo.App.1993), on which Matlack relies, a division of this court held that, even though a leased driver is excluded from the statutory definition of "employee," that presumption could still be overcome by meeting the "control" and "relative nature of the work" tests.

However, these tests were subsequently codified, and the statute, which was inapplicable in *Klein* because of its April 12, 1993, effective date, applies here to the driver's 1993 cause of action. *See* Colo. Sess. Laws 1993, ch. 103, § 8–40–202(2) at 356–358. Furthermore, the statute specifically provides that: "[N]othing in this section shall be construed to conflict with section 8–40–301." Section 8–40–202(2)(c), C.R.S.1998. Thus, § 8–40–202(2), rather than *Klein*, governs, and because it is inapplicable to leased drivers, the court did not err by not applying these tests.

■ We further note that there was no determination made in the underlying workers' compensation proceeding as to whether driver was an "employee" of Matlack. Therefore, we reject Matlack's implicit contention that the driver's receipt of workers' compensation payments precludes a redetermination of this issue in this action. *See generally* 8 *Larson's Workers' Compensation Law* § 79.72(d) (1998).

II.

■ Both defendants contend that the trial court abused its discretion by admitting plaintiffs' evidence of violations of the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 653(b)(4), as a discovery sanction. We agree.

Prior to trial, Conoco moved in limine to exclude any evidence of OSHA standards and regulations on the grounds that: (1) OSHA regulations create duties between an employer and employee, but not between a premises owner and an invitee, and that, therefore, they are not relevant to common law negligence; and (2) OSHA regulations cannot provide a basis for a private cause of action such as negligence *per se*. The court deferred ruling on the motion until trial.

Additionally, prior to trial, the court imposed discovery sanctions on Matlack for failing to provide timely disclosure of files of other accidents and for incorrectly answering an interrogatory. The trial court sanctioned Matlack by admitting an OSHA citation from another accident, which driver used to establish negligence and negligence *per se* claims against Matlack. The court also prohibited Matlack from offering its own evidence as to these accidents, although it was permitted to cross-examine and impeach plaintiffs' witnesses.

Thus, the jury heard references to OSHA violations. The court then decided that the OSHA regulations could not form the basis for a negligence *per se* claim, and refused to give plaintiffs' negligence *per se* instructions to the jury. During deliberations, the jurors asked the court if copies of OSHA regulations were available for their use, and the court declined to provide them to the jury.

In *Canape v. Petersen*, 897 P.2d 762 (Colo. 1995), the Colorado Supreme Court recognized that OSHA regulations do not create a private cause of action in tort and that the intent of that legislation, 29 U.S.C. 653(b)(4), was to prevent injured employees from using OSHA to bypass state workers' compensation through a private action. Thus, the court held that it was proper for the trial court to refuse to instruct the jury on the issue of negligence *per se* based on an alleged violation of OSHA regulations.

Here, under *Canape* the trial court should have excluded the OSHA evidence from the outset. Although the trial court eventually relied on that case in refusing plaintiffs' jury instruction, by then the jury had heard repeated references to OSHA. The harm caused by this error is illustrated by the jury's initial request for a copy of the OSHA regulations.

We are not persuaded that the effect of *Canape* can be sidestepped under the guise of a discovery sanction against Matlack. Remedying one harm by causing yet another was an abuse of discretion. *See Newell v. Engel*, 899 P.2d 273 (Colo.App.1994)(abuse of discretion standard applies to trial court's decision to impose discovery sanction) *See*

*also Wright v. Woller*, 976 P.2d 902 (Colo App.1999). Therefore, we conclude that reversal and remand for a new trial is required.

## III.

Defendants both contend that the trial court erred in refusing to admit a videotape made by Conoco which purported to show that asphalt could be safely loaded, and Conoco maintains that the court erred in admitting the testimony of an expert whose anticipated testimony had never been disclosed. However, because we are remanding for a new trial, we do not address these issues.

## IV.

Conoco's final contention is that § 13–21–101, C.R.S.1998, the statute on which the trial court based an award of prejudgment interest on future damages, results in a deprivation of due process. We perceive no constitutional infirmity.

## A.

■ As an initial matter, we reject plaintiffs' argument that, since Conoco failed to give the attorney general proper notice of the constitutional issue, we may not address this issue.

Section 13–51–115, C.R.S.1998, requires that the attorney general be given notice of any proceeding in which a request is made to declare a statute, an ordinance, or a franchise unconstitutional.

Here, Conoco first raised the constitutional issue in the post-trial motion and failed to notify the attorney general at that time. Conoco also failed to give such notice when the notice of appeal was filed in this court. Notice was first given when the attorney general was served with a copy of Conoco's appellate opening brief.

Although it would certainly have been preferable for Conoco to have notified the attorney general at the time the post-trial motion was filed, we conclude that any error was harmless in this instance since the attorney general ultimately declined participation. *See Howell v. Woodlin School District R–104*, 198 Colo. 40, 596 P.2d 56 (1979) (relaxing the notice requirement and declining to vacate judgment when a constitutional issue was raised during the course of the trial); *cf. Lakewood Pawnbrokers, Inc. v. City of Lakewood*, 182 Colo. 315, 512 P.2d 1241 (1973) (where failure to give notice to the attorney general is discovered for the first time on appeal, and this is the only defect in an otherwise proper declaratory judgment proceeding, the appropriate relief is vacation of the judgment and remand for further proceedings to permit such notice to be given).

A remand for notice at this time would be futile. Therefore, we choose to address the merits of Conoco's constitutional issue.

## B.

■ Conceding that the rational basis test applies, *see Willer v. City of Thornton*, 817 P.2d 514 (Colo.1991), Conoco argues that there is no rational basis for awarding prejudgment interest on future damages, which have not yet "occurred." We·disagree.

■ Section 13–21–101 does not distinguish between past and future damage awards for the purpose of calculating prejudgment interest. *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901 (Colo.1993). The award of pre-judgment interest serves not only the purpose of compensating a party for loss of use of money, but is also used to encourage the settlement of cases both before and after trial. *Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631 (Colo.App.1998) (rejecting other constitutional attacks on § 13–21–101).

In our view, these purposes constitute rational bases for imposing pre-judgment interest on future damages. Conoco has failed to prove otherwise beyond a reasonable doubt. *See Scholz v. Metropolitan Pathologists, P.C., supra* (reasonable doubt standard applies to rational basis review).

Although the trial court properly refused to dismiss the action, the judgment entered on the jury verdict is reversed, and the cause is remanded for further proceedings, including the imposition of appropriate sanctions

against Matlack for its discovery violations, and for a new trial.

Judge RULAND and Judge ROTHENBERG concur.