FFE TRANSPORTATION SERVICES, INC., Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Laurel Butts, Respondents.

No. 03CA0622.

Colorado Court of Appeals, Div. IV.

May 20, 2004.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.

Clisham, Satriana & Biscan, L.L.C., Keith E. Mottram, Denver, Colorado, for Petitioner.

Ken Salazar, Attorney General, Laurie Rottersman, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Weddell & Haller, P.C., Paul H. Haller, Colorado Springs, Colorado, for Respondent Laurel Butts.

Opinion by Judge GRAHAM.

Petitioner, FFE Transportation Services, Inc., seeks review of a final order of the Industrial Claim Appeals Office (Panel) determining that it was liable for workers' compensation benefits as the statutory employer of Laurel Butts (claimant). We conclude that the Panel misperceived the statutory scheme that excludes certain drivers, including claimant, from the status of statutory employee, and therefore, we set the order aside.

The facts are undisputed. Claimant was employed as a long-distance truck driver pursuant to a written employment agreement with D. Grego Trucking Co. D. Grego had a conforming lease agreement with FFE, a contract carrier, and claimant was not a party to that agreement. D. Grego was uninsured for workers' compensation when claimant suffered two work-related injuries; however, D. Grego and claimant were insured under an occupational accident policy, similar to a workers' compensation policy, which paid benefits to claimant. Claimant was terminated without fault on May 2, 2000, and a hearing was conducted concerning temporary disability benefits for the period from May 2, 2000, through March 15, 2001.

The administrative law judge (ALJ) found that FFE conducted its trucking business by contracting out its work to independent contractors such as D. Grego. The ALJ also found that the lease agreement between D. Grego and FFE met the requirements of an independent contractor agreement under § 40–11.5–102, C.R.S.2003. However, because claimant was not a party to that lease agreement, the ALJ determined that claimant was not "working ... under a lease agreement" within the meaning of § 8–40–301(5), C.R.S.2003, and, therefore, was FFE's statutory employee.

On review, the Panel reasoned that the term "under" was ambiguous in the context of § 8–40–301(5). After considering the legislative history, the Panel construed § 8–40–301(5) to be limited to circumstances where the claimant is a party to the lease agreement with the contract carrier. The Panel then affirmed the ALJ's order obligating FFE to pay claimant temporary disability benefits. We conclude that the Panel erred in so limiting the application of § 8–40–301(5).

We agree with FFE that the term "under" as used in § 8–40–301(5) is not ambiguous and that the plain meaning of the statute determines claimant is not a statutory employee of FFE.

Section 8–41–401, C.R.S.2003, establishes the circumstances when statutory employment exists. Section 8–41–401(7), C.R.S. 2003, however, provides that "[t]his section shall not apply to any person excluded from the definition of 'employee' pursuant to section 8–40–301(5)." Section 8–40–301(5) states: " 'Employee' excludes any person who is working as a driver under a lease agreement pursuant to section 40–11.5–102, C.R.S., with a common carrier or contract carrier."

Determining "under" to be ambiguous, the Panel construed § 8–40–310(5) and related statutory provisions to mean that before a driver could be excluded from the class of statutory employees, the driver had to be the

independent contractor who was a signatory to a lease directly with the contract carrier. We discern no ambiguity in § 8–40–301(5) and conclude that "employee" also excludes a driver who is working for an independent contractor operating under a conforming lease with a contract carrier.

Section 8–40–301(6), C.R.S.2003, provides that "[a]ny person working as a driver with a ... contract carrier ... shall be offered workers' compensation insurance coverage ... or similar coverage consistent with the requirements set forth in section 40–11.5–102(5), C.R.S." Here, it is undisputed that the lease contract conformed to the provisions of § 40–11.5–102(5).

A term is ambiguous if it is subject to more than one meaning. *See Longmont Toyota, Inc. v. Indus. Claim Appeals Office,* 85 P.3d 548 (Colo.App.2003)(*cert. granted on other grounds* Mar. 8, 2004).

As relevant here, the word "under" means "below: situated beneath: within the group- or designation of." *Webster's Third New International Dictionary* 2487 (1986). Placing this item in context with the related statutory provisions, we conclude that the legislature intended to exclude independent contractors and their drivers from the class of statutory employees.

Section 8–40–301(5) specifically refers to drivers as opposed to independent contractors. This is in sharp contrast to § 40–11.5–102, which prescribes how lease contracts between contract carriers and their common carrier independent contractors must conform. Indeed, § 40–11.5–102(1)(f), C.R.S. 2003, assumes that independent contractors may use assistants. Had the General Assembly intended to exclude only independent contractors from the definition of statutory employee, it would not have allowed independent contractors to use assistants.

The provisions that assure that insurance coverage shall be afforded to drivers further convince us that the General Assembly intended to exclude drivers working for qualified independent contractors from the definition of "employee." Section 40–11.5–105(5)(a), C.R.S.2003, requires that a conforming lease with a common carrier who is an independent contractor "shall provide for coverage under workers' compensation or a *private insurance policy that provides similar coverage* " (emphasis added). Yet § 8–40–301(6) provides that "any person working as a driver with a common carrier ... shall be offered workers' compensation insurance coverage ... *or similar coverage consistent with the requirements of section 40–11.5–102(5)* " (emphasis added). Had the General Assembly intended to limit the exclusion in § 8–40–301(5) to only independent contractors in direct contractual privity with the contract carrier, there would have been no need to add the provision of § 8–40–301(6) relating to drivers, because in that event the two provisions would be redundant in that "driver" and "independent contractor" would be interchangeable terms. We should construe these statutory provisions in pari materia, giving effect to both to carry out the intent of the General Assembly and to avoid inconsistencies and absurdities. *Martinez v. People,* 69 P.3d 1029 (Colo.2003).

Here, the interest of providing insurance coverage to workers is served because a policy was in force that paid benefits to the injured claimant. The injured worker was not left without insurance or recourse.

We also find support for our reading of the statutory scheme in *Newsom v. Frank M. Hall & Co.,* —— P.3d ——, 2004 WL 352680 (Colo.App. No. 02CA1375, Feb. 26, 2004), in which a division of this court concluded that under § 8–41–401, "a statutory employment relationship does not exist [between the general contractor and an employee of a subcontractor] if the subcontractor is an independent contractor as to the general contractor." We likewise will not adopt the fiction that an employee of an independent contractor whose relationship with the contract carrier conforms to the statutory requirements may become a statutory employee of the contract carrier.

The order is set aside.

Judge LOEB and Judge HUME * concur.